## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 22-00237-TFM-4 |
| | ) | |
| REGINALD MARTEZ ROBINSON, JR. | ) | |

### PLEA AGREEMENT

The defendant, **REGINALD MARTEZ ROBINSON, JR.,** represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1.      The defendant understands his rights as follows:

      a.      To be represented by an attorney;

      b.      To plead not guilty;

      c.      To have a trial by an impartial jury;

      d.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

      e.      To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Indictment, charging a violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud.

3.      The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false

1

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge that has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. The defendant recognizes that pleading guilty may have consequences with respect to immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which he is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one,

including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

9.   A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

10.  This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

11.  The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

12.     The maximum penalty the Court could impose as to Count One of the Indictment is:

    a.     Thirty (30) years' imprisonment;

    b.     A fine not to exceed $1,000,000;

    c.     A term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d.     A mandatory special assessment of $100.00; and

    e.     Such restitution as may be ordered by the Court.

## SENTENCING

13.     The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any

4

particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15.     The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

17.     The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## RESTITUTION

18.     Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing and as to all relevant conduct regardless of whether it relates to the count of conviction.

## FORFEITURE

19.     The defendant agrees to confess the forfeiture to the United States of all properties that represent proceeds of his criminal activities or that facilitated any aspect of these illegal activities.

5

## FINANCIAL OBLIGATIONS

20.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

21.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22.     The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

23.     The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow

the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a.  The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

b.  The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.  The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any

7

grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.     If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.     The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.     The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.     If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise

8

of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h.    The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false

information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1)     permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2)     permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.     Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his

10

cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j.    The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

24.    As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

a.    **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

(1)    any sentence imposed in excess of the statutory maximum;

11

(2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25.    If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26.    The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27.    If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28.    The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

29.    In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he

12

violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30.     This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: __March 6, 2023__

Justin D. Roller
Assistant United States Attorney

Date: 3-7-2023

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

13

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 3/22/23

Reginald Martez Robinson, Jr.
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 3/22/23

Jonathan B. Friedlander
Attorney for Defendant

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 22-00237-TFM-4** |
| | ) | |
| **REGINALD MARTEZ ROBINSON, JR.** | ) | |

## FACTUAL RESUME

The defendant, **REGINALD MARTEZ ROBINSON, JR.** ("**ROBINSON**"), admits the allegations of Count One of the Indictment.

## ELEMENTS OF THE OFFENSE

**ROBINSON** understands that in order to prove a violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment, the United States must prove:

First:  two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the Indictment; and

Second:  the defendant knew the unlawful purpose of the plan and willfully joined in it.

## OFFENSE CONDUCT

**ROBINSON** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **ROBINSON's** plea of guilty. The statement of facts does not contain each and every fact known to **ROBINSON** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, times, amounts, and locations referenced below are approximations.

1

**ROBINSON** admits that from at least February 2021 through and including October 2022, in the Southern District of Alabama, Southern Division, and elsewhere, he willfully, knowingly, and unlawfully combined, conspired, confederated, and agreed together with other persons to commit an offense against the United States, namely, bank fraud in violation of 18 U.S.C. § 1344(1). Specifically, **ROBINSON**, his codefendants named in Count One of the Indictment, and other coconspirators known and unknown, with intent to defraud, knowingly conspired to execute, and attempt to execute, a scheme and artifice to defraud the banks and credit unions named in the Indictment, financial institutions the deposits of which were, at the time of the offense, federally insured by the Federal Deposit Insurance Corporation ("FDIC") and the National Credit Union Administration.

The purpose and object of the conspiracy was for **ROBINSON** and his coconspirators to unjustly enrich themselves by defrauding the banks and credit unions named in the Indictment of money and property. To accomplish the conspiracy, **ROBINSON** and his coconspirators committed, among other things, the following acts: (a) obtaining, possessing, and opening stolen U.S. mail to acquire checks without authorization from their lawful owners; (b) producing counterfeited and forged checks using information derived from checks stolen from the U.S. mail; (c) obtaining, possessing, and using stolen identification documents, including driver's licenses; (d) producing false identification documents, including driver's licenses; (e) obtaining, possessing, and using means of identification of other persons, including names, addresses, bank account numbers, and signatures; (f) making unlawful mobile and automated teller machine ("ATM") deposits of counterfeited and forged checks; and (g) making unlawful cash withdrawals and transfers using the proceeds of deposits of counterfeited and forged checks.

2

The above-described fraud scheme came to the attention of federal law enforcement in December 2021, when a security specialist from Iberia Bank ("Iberia") contacted federal agents to report a mail theft and counterfeit check-cashing scheme. Specifically, in early December 2021, an Iberia customer placed six checks in its outgoing business mailbox, which was located on Grelot Road in Mobile, Alabama. Those six checks, which had been made out to various clients of the victim business identified herein and in the Indictment as "D.S.T., Inc.," were drawn on the business's Iberia account and each bore the signature of a real person and authorized representative of the business. The checks were then stolen from D.S.T., Inc.'s mailbox, altered, and negotiated by individuals who were not authorized to possess or negotiate the checks. The checks were also later used as a template for various additional counterfeit checks that were fraudulently deposited as part of the above-described fraud scheme.

Iberia provided federal agents with copies of the original, legitimate business checks, as well as copies of the stolen and forged checks for comparison. Iberia's report led federal agents to obtain records and accountholder information for the accounts into which the counterfeited checks had been deposited. Table 1 below provides details regarding the counterfeited checks of D.S.T., Inc. that were deposited, including (a) dates of deposits; (b) check numbers; (c) amounts; (d) names of the accountholders listed as payees on the counterfeited checks; and (e) the financial institutions into which the counterfeited checks were deposited:

| Date of Deposit | Check Number | Amount | Accountholder (Payee) | Accountholder's Financial Institution |
|---|---|---|---|---|
| 12/06/2021 | 199633 | $13,210.10 | B.J. | Navy Federal Credit Union ("NFCU") |
| 12/07/2021 | 199623 | $6,605.08 | K.H. | NFCU |
| 12/07/2021 | 199630 | $2,201.69 | K.H. | NFCU |
| 12/07/2021 | 199625 | $3,302.55 | J.P. | Regions Bank ("Regions") |

| Date of Deposit | Check Number | Amount | Accountholder (Payee) | Accountholder's Financial Institution |
|---|---|---|---|---|
| 12/08/2021 | 199624 | $3,302.55 | J.B. | Regions |
| 12/08/2021 | 199631 | $2,201.69 | J.P. | Regions |
| 12/27/2021 | 199763 | $6,605.08 | T.M. | Wells Fargo Bank, N.A ("Wells Fargo") |
| 12/30/2021 | 199622 | $6,605.08 | C.K. | Regions |
| 12/31/2021 | 199627 | $2,201.69 | J.P. | Regions |
| 12/31/2021 | 199632 | $2,201.69 | J.P. | Regions |
| 01/07/2022 | 199765 | $1,921.09 | D.J. | NFCU |
| 01/07/2022 | 199766 | $1,946.00 | D.W. | NFCU |
| 01/07/2022 | 199767 | $1,805.09 | R.M. | NFCU |
| 01/18/2022 | 1102346 | $5,282.20 | T.N. | Regions |
| **TOTAL:** | | **$59,391.58** | | |

*Table 1* (Iberia counterfeited check deposit information).

Based on the above-referenced information, agents interviewed **ROBINSON** and various coconspirators who participated in the scheme alleged in Count One of the Indictment. Agents also obtained records revealing fraudulent deposits of additional counterfeited checks corresponding to other victim businesses, including fraudulent deposits and withdrawals by individuals connected to **ROBINSON**. Agents also obtained search warrants for **ROBINSON's** Facebook account content, which contained evidence of his fraudulent activities and willful participation in the scheme alleged in Count One, including communications with coconspirators in furtherance of the scheme.

**ROBINSON** and his coconspirators used checks stolen from the U.S. mail to produce counterfeited versions for the illegal deposits. **ROBINSON** and his coconspirators also used social media, including Facebook and Instagram, to recruit accountholders to provide their bank account information and debit and credit cards to make fraudulent deposits of counterfeited checks and subsequent withdrawals of illicit proceeds of the scheme.

4

For example, on December 27, 2021, a counterfeited D.S.T., Inc. identified in Table 1 above as check number 199763 for $6,605.08 was deposited into T.M.'s Wells Fargo account (number x2508). Wells Fargo ATM surveillance video depicts coconspirator Arrington Jaylun Gardner ("Gardner") depositing the check at a branch in Daphne, Alabama. Later, on December 29, 2021, T.M.'s Wells Fargo account received an ATM deposit of another counterfeited check for $4,749.30 drawn on the Resource Bank account (number x0023) of a victim business in Mandeville, Louisiana. Again, Wells Fargo ATM surveillance video depicted Gardner depositing the check at a Wells Fargo branch, this time on Dauphin Street in Mobile.

Agents interviewed T.M., who identified **ROBINSON** as the individual who had recruited T.M. to provide Wells Fargo account information to further the scheme. **ROBINSON's** Facebook records, obtained pursuant to a federal search warrant, show that the day before the first fraudulent deposit into T.M.'s account, **ROBINSON** messaged Gardner about having account information and a card for a Wells Fargo account that Gardner could use to commit fraud. **ROBINSON** sent Gardner the login information for T.M.'s account, adding that T.M. wanted to "know how long it gone take to hit." Gardner responded, "next day." Gardner and **ROBINSON** then exchanged follow-up messages into early January 2022 about whether the illicit proceeds were accessible, how much Gardner's and **ROBINSON's** respective cuts of the money would be, and Gardner's several follow-up phone calls with T.M. **ROBINSON** also exchanged messages with other members of the conspiracy to further the scheme. The above-referenced messages are a non-exhaustive sample of the messages that **ROBINSON** sent in furtherance of the conspiracy alleged in Count One of the Indictment, to which he is pleading guilty.

On July 26, 2022, federal agents conducted a recorded interview of **ROBINSON**. During the interview, **ROBINSON** admitted that he knowingly took part in the conspiracy alleged in

Count One of the Indictment, specifically by recruiting individuals to provide their bank account information so that counterfeited checks could be deposited and illicit proceeds of the scheme withdrawn.

The parties agree for sentencing purposes that **ROBINSON** should be held responsible for intended loss of more than $95,000 but less than $150,000. U.S.S.G. § 2B1.1(b)(1)(E). The parties further agree for sentencing purposes that **ROBINSON's** offense involved (a) more than 10 victims; (b) conduct constituting sophisticated means; and (c) the possession and use of device-making equipment and authentication features. U.S.S.G. §§ 2B1.1(b)(2)(A)(i), (b)(10), and (b)(11).

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: _March 6, 2023_

Justin D. Roller
Assistant United States Attorney

Date: 3-7-2023

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 3/22/23

Reginald Martez Robinson, Jr.
Defendant

6

Date:_____                    _____
                                         Jonathan B. Friedlander
                                         Attorney for Defendant